IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL B.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

No. 3:19-cv-00033-HZ

OPINION & ORDER

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Michael Howard
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Daniel B. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on May 22, 2013, alleging an onset date of July 30, 2007. Tr. 13.[2] Plaintiff's date last insured is December 31, 2013. Tr. 15. His application was denied initially and on reconsideration. Tr. 153, 161.

      On May 14, 2015, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ"). Tr. 64. On June 11, 2015, the ALJ found Plaintiff not disabled. Tr. 128. The Appeals Council granted review on February 15, 2017, and remanded the case to the ALJ under 20 C.F.R. § 404.977 to (1) consider additional records from Dr. Vosloo and Providence Hematology and Oncology and (2) give further consideration to claimant's chronic fatigue syndrome. Tr. 149. A second hearing was held on July 13, 2017. Tr. 35. After reviewing the additional records, the ALJ issued a second decision on October 27, 2017, finding Plaintiff not

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

disabled. Tr. 13. The Appeals Council denied review of the ALJ's second decision on November 6, 2018.  Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on fibromyalgia and degenerative disc disease, among other conditions. Tr. 312. At the time of his date last insured, he was 48 years old. Tr. 27. He is a high school graduate and attended some community college. Tr. 27, 69–71. He has past relevant work experience as a radiation monitor and a cook. Tr. 27.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets his burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date of July 30, 2007. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease and fibromyalgia." Tr. 16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) through the date last insured with the following limitations:

> [H]e could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk for a total of six hours in an eight-hour day, and could sit for a total of six hours in an eight-hour day. The claimant could not climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, kneel, and crawl; could frequently bend, stoop, and crouch. The claimant could perform frequent reaching and handling, and fingering; and needed to avoid exposure to hazardous machinery.

Tr. 19. Based on this assessment, the ALJ concluded that Plaintiff could perform his past relevant work as a radiation monitor. Tr. 27. The ALJ also found at step five that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as "production assembler," "electronics worker," and "cashier II." Tr. 28. Thus, the ALJ concluded that Plaintiff was not disabled. Tr. 28.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony and (2) failing to include limitations based on Plaintiff's subjective symptom testimony in the RFC. This Court agrees.

I.    **Subjective Symptom Testimony**

Plaintiff first argues that the ALJ erred in discounting his subjective symptom testimony. Pl. Br. 8, ECF 10. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. In assessing a claimant's testimony about subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947,

959 (9th Cir. 2002). But a general assertion that the plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

Plaintiff worked as a nuclear health technician prior to his alleged disability onset date of July 30, 2007. Tr. 72–73. He monitored radiation levels during refueling shutdowns of nuclear plants to ensure that workers were not overexposed to radiation. Tr. 73. Plaintiff stopped working in 2007 due to persistent low back pain. He testified that he "had a bad back [that] just gradually kept getting worse through the years," and in July 2007, while helping his parents, he "threw something out." Tr. 77. After that, he "started having some pretty serious issues[.]" Tr. 77.

At his first hearing in 2015, Plaintiff testified that at the time of his date last insured in December 2013 he could only walk for fifteen minutes, sit for about twenty minutes, and lift a gallon of milk. Tr. 78–79. He has used a cane on and off since 2008. Tr. 79. He testified that he had trouble with concentration and focus and did not complete his community college coursework because he was unable to keep up with classes. Tr. 87-88. He wrote in his function report that he can only focus for three to five minutes at a time before his mind starts to wander. Tr. 360. On bad days, Plaintiff testified that he is stuck in bed until noon. Tr. 85.

In describing his daily activities, Plaintiff stated that some days are worse than others. Tr. 349–363. He spends a significant amount of time sitting in his recliner or lying in bed due to back pain. Tr. 349–51. Plaintiff can prepare simple meals, like a bowl of cereal. Tr. 350. He cares for his daughter one or two days a week with help from his family. Tr. 350. Plaintiff's in-laws often help look after his daughter, and his wife comes home early from work on days when

they are unable to help out. Tr. 350–51. Plaintiff is unable do many household chores. It takes him an entire day to do a load of laundry, and he is unable to fold it once it is clean without significant pain. Tr. 354-55. He can also mow a small patch of lawn. Tr. 354–55. It only takes him about thirty minutes, but it precludes him from engaging in other activities for the rest of the day because of his pain. Tr. 354–55. Plaintiff testified that he has not been able to maintain many friendships because of his impairments. Tr. 79–80, 358. He does, however, spend time with his immediate family, and they eat out once or twice a week. Tr. 357.

The ALJ provided three reasons for discounting Plaintiff's subjective symptom testimony: (1) inconsistencies with Plaintiff's activities of daily living; (2) an effective conservative treatment record; and (3) lack of support from the objective medical evidence. Because these reasons are not supported by substantial evidence in the record, the ALJ erred in discounting Plaintiff's subjective symptom testimony.

A.     Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). To impact a claimant's credibility, the

activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ found that the "record . . . references activities that support the residual functional capacity and that are not consistent with the extent of debilitation alleged." Tr. 24. In making this finding, the ALJ cited Plaintiff's ability to care for his daughter and do various household chores. Tr. 24–25. The ALJ also cited Plaintiff's statements to providers in the medical record about his recent trips and activities with his family, ability to exercise, and other household and caretaking activities. Tr. 24–25.

The ALJ's conclusions are not supported by substantial evidence. First, the ALJ takes Plaintiff's statements about his daily activities out of context. Though Plaintiff helps care for his daughter and does a few household chores, he also has significant limitations in engaging in these activities. For example, Plaintiff's in-laws help take care of his daughter, and his wife comes home early from work on the days that they are unable to help. Tr. 350–51; *see also* tr. 859. Plaintiff is only able to prepare simple meals, such as heating up a hot dog, making a sandwich, or preparing a bowl of cereal. Tr. 350, 353. He can start a load of laundry but is unable to fold it when its clean. Tr. 354. Plaintiff mows a small patch of lawn every other week, but this thirty-minute task exacerbates his pain such that he cannot do anything the rest of the day. Tr. 354.

In addition, many of the activities listed by the ALJ—including a trip to the beach with his family and an increased overall activity level—were reported to medical providers during a five-month period of temporary improvement in Plaintiff's pain after he received facet injections in 2012. *See* tr. 691, 708, 739, 747. Medical records from before, during, and after this period

demonstrate that Plaintiff still experienced significant pain. Tr. 708 (reporting that he was going to the gym regularly but still had "frequent spikes in [his] pain level"), 739 (pain comes and goes), 746 (pain is somewhat more severe), 750 (increase in pain over last month). And when the ALJ asked Plaintiff at the first hearing about his trip to the beach, Plaintiff explained that it was difficult to walk on the sand and he spent a lot of time in his room during that trip. Tr. 87. He also reported to his medical providers that he was a "little sore" afterwards. Tr. 691. As the ALJ notes, there is one chart note from 2008 where Plaintiff reported to a provider that he was traveling to Ohio for Thanksgiving. Tr. 547. However, there is no additional information about that trip, and the ALJ never asked for further detail. As a whole, the ALJ's characterization of Plaintiff's ability to engage in activities of daily living is not supported by substantial evidence.

Second, Plaintiff's activities are not inconsistent with the degree of his reported limitations. In his function report, Plaintiff wrote that he had difficulty standing, walking, and sitting still for long periods of time. Tr. 359. Specifically, he wrote that he could only walk for ten to fifteen minutes before needing to rest for fifteen to twenty minutes. Tr. 360. At the hearing, Plaintiff similarly testified that he can only walk for fifteen minutes at a time and sit for twenty minutes. Tr. 78–79. He said he could lift a gallon of milk. Tr. 79. Plaintiff also described difficulty with concentration and focus. Tr. 87–88, 359–60. Plaintiff's activities—which include some childcare, preparing simple meals, mowing the lawn for thirty minutes every other week, and running a load of laundry—are not inconsistent with these limitations. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("[T]he mere fact that [the plaintiff] cares for small children does not constitute an adequately specific conflict with her reported limitations."). Accordingly, the ALJ erred in finding that Plaintiff's activities were inconsistent with the degree of debilitation alleged.

B.  Course of Treatment

In assessing a claimant's credibility, the ALJ may consider the effectiveness of any medication, see *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication[.]"), and evidence of conservative treatment, *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."). However, because "[c]ycles of improvement and debilitating symptoms are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Reports of improvement "must . . . be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.*

The ALJ found that the record demonstrated improvement with conservative treatment. Tr. 21. The ALJ noted that Plaintiff reported doing well with a fentanyl patch and injections. Tr. 21–22. The ALJ also emphasized various medications that Plaintiff was prescribed to help with his pain, including oxycodone, gabapentin, and tramadol. Tr. 21–22. According to the ALJ, Plaintiff's conditions and pain also improved with physical therapy and a home exercise program. Tr. 22–24.

The ALJ's conclusion that Plaintiff's treatment was conservative is not clear or convincing. In addition to physical therapy and chiropractic treatments, his providers proscribed various opiates—including fentanyl, oxycodone, Valium, and Percocet. Tr. 496, 437 (tried

11 – OPINION & ORDER

chiropractic treatment and physical therapy), 546 ("doing well" with fentanyl patch; Valium not helping), 577 (taking oxycodone), 574 (taking Percocet and pursing physical therapy). He also tried other pharmaceutical treatments, including tramadol, clonidine, and gabapentin. Tr. 572 (prescription for tramadol), 817 (prescription for gabapentin after diagnosis of fibromyalgia), 842 (new prescription for clonidine). Plaintiff underwent facet and sacroiliac injections in 2009 and 2012, tr. 578, 687, 729, and providers attempted a medial branch block in the hopes that he could pursue radiofrequency ablation to treat his chronic pain, tr. 631–33. Courts have found that similar courses of treatment are not conservative in the context of backpain and fibromyalgia. *See Revels v. Berryhill*, 874 F.3d 648, 667–68 (9th Cir. 2017) (finding that facet and epidural injections in the plaintiff's back and neck along with prescriptions for Valium, Vicodin, Percocet, and Neurontin was not conservative treatment for a patient suffering from fibromyalgia); *Garrison*, 759 F.3d at 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Christine G. v. Saul*, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) (citing cases and finding that "[m]any courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment."). Thus, the ALJ erred in finding that Plaintiff's treatment was conservative.

In addition, the ALJ's conclusion that Plaintiff's course of treatment improved his symptoms is not supported by substantial evidence in the record. The record largely reflects constant back pain that fluctuated in its severity. Tr. 79–80 (notes that he has some "really bad day[s]"), 349 (describes varying pain and activity level depending on whether it's a good or bad day), 708 (notes frequent spikes in pain level), 739 (reports that pain comes and goes). Often, treatments provided only temporary or "fair" pain relief or caused significant side effects. Tr.

496 (minimal relief from chiropractic treatment), 578 (notes a few days of relief post injection, but spasms exacerbated by physical therapy), 574 (pain worse with physical therapy), 546 (Valium "not helping"), 761 (effectiveness of tramadol is "fair"), 796 (medications not as effective as in past), 818 (will wean off gabapentin due to side effects), 843 (clonidine not helping with pain). Many of the records that the ALJ cites as demonstrating improvement are taken from a five-month period of temporary pain relief between April and September of 2012 after Plaintiff received two sets of injections in his back. *See* tr. 22–23, 722, (pain much more severe two months after facet injections), 752 (pain and mobility worse three months after sacroiliac injections), 767, 771 (noting injections offered short-term relief), 846 (2013 chart note observing that Plaintiff is in a "tremendous amount of pain"). In the fall of 2012, records also reflect that Plaintiff's medial branch block failed, precluding Plaintiff from further treatment by way of radiofrequency ablation. Tr. 633, 761, 765. Such temporary periods of improvement given the nature of Plaintiff's pain does not undermine Plaintiff's testimony as to the severity of his symptoms. Accordingly, the ALJ erred in discounting Plaintiff's testimony because Plaintiff's symptoms improved with conservative treatment.

    C.    Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And in some cases, the ALJ can

discount claimant testimony when that testimony is not supported by the objective medical record. See *Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Burch*, 400 F.3d at 681 (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). But this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ engaged in a lengthy discussion of the objective medical evidence, ultimately concluding that the medical record "does not contain objective findings that would support the extent of the claimant's allegations." Tr. 24. This is the sole remaining reason for rejecting Plaintiff's testimony. Because this reason alone is insufficient to discredit Plaintiff, the Court finds that the ALJ erred in discounting Plaintiff's subjective symptom testimony.

**II.    RFC Formulation**

Plaintiff also argues that the ALJ erred in formulating both Plaintiff's RFC and the hypotheticals presented to the VE. Pl. Br. 18. The ALJ has the responsibility of determining a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is used at step four of the sequential analysis to determine if a claimant is able to perform past relevant work, and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a). The RFC reflects the most an individual can do. 20 C.F.R. § 416.945. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). The Court should uphold step four

and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss*, 427 F.3d at 1217.

The ALJ erred in formulating Plaintiff's RFC. Plaintiff's improperly rejected testimony established more stringent limitations than the ALJ's RFC and the hypotheticals that the ALJ presented to the VE. Plaintiff, for example, testified and wrote in his function report that he was limited in his ability to stand and sit and could only walk for ten to fifteen minutes at a time before needing to stop and rest for fifteen to twenty minutes. Tr. 359–60. He also wrote that he could only focus for three to five minutes before his mind began to wander. Tr. 360. The RFC and hypotheticals presented to the VE included a sit/stand option but otherwise only limited the cumulative number of hours Plaintiff could walk and stand to four to six hours in an eight-hour workday and sitting to six hours in an eight-hour day. Tr. 19, 59–60. And neither the hypotheticals nor the RFC had any limitations related to concentration, persistence, and pace. *See* tr. 19, 57–60. Because the ALJ failed to include all of Plaintiff's limitations in both the RFC and the hypotheticals presented to the VE, the ALJ erred in his analysis at steps 4 and 5. *Valentine v. Commissioner*, 574 F.3d 685, 690 (9th Cir. 2009) (hypothetical presented to the VE is derived from the RFC); *Nguyen v. Chater*, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) (finding an incomplete hypothetical cannot "constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert").

### III.  Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has

three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

Here, Plaintiff argues that all three parts of the credit-as-true analysis have been met and the ALJ would be required to find Plaintiff disabled if his testimony was properly credited as true. Pl. Br. 20. In doing so, Plaintiff specifically points to the VE's testimony that a person who would be absent two or more days per month, off-task 20% or more per month, or require frequent breaks totaling an hour or two in an eight-hour day would be precluded from competitive employment. *Id.*

Plaintiff, however, has failed to identify any testimony or other medical evidence establishing these limitations. Indeed, there is no evidence establishing that Plaintiff would miss two days or more of work per month. Though the record shows that Plaintiff had difficulty with concentration and focus, tr. 88, 351, 356, 360, this evidence does not establish the specific limitations—being off-task 20% or more per month and requiring frequent breaks—that the VE found would be work-preclusive. Similarly, there is no VE testimony establishing whether the other limitations Plaintiff described—such as difficulty walking for more than ten to fifteen minutes at a time before needing a break, difficulty sitting, and difficulty standing—would

necessarily preclude Plaintiff from any work activity. *See* tr. 57–59 (finding jobs that Plaintiff could perform under hypotheticals that included a sit/stand option and limited the total number of hours that Plaintiff could sit, stand, and walk in an eight-hour day). Accordingly, the Court cannot conclude on the record before it that Plaintiff is disabled. A remand for further administrative proceedings is the proper course in this case.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED: \_\_\_\_\_July 2, 2020\_\_\_\_\_.

_____
MARCO A. HERNÁNDEZ
United States District Judge